TERRITORY OF HAWAII, BY H. R. HEWITT, ITS ATTORNEY GENERAL, *v.* ARTHUR E. RESTARICK, STATUTORY ADMINISTRATOR OF THE ESTATE OF NAPAHU MAHOE, DECEASED.

No. 2158.

SUBMITTED JULY 21, 1934.            DECIDED DECEMBER 20, 1934.

COKE, C. J., BANKS AND PARSONS, JJ.

274

This cause comes here on a writ of error. Plaintiff-appellant instituted in the court below an action in assumpsit to recover judgment against the defendant in his capacity as administrator of the estate of Napahu Mahoe, deceased. The cause, which was tried by the court jury waived, resulted in a decision and judgment in favor of the defendant. Briefly the facts are as follows: Napahu Mahoe, an insane person, was admitted as a non-paying indigent patient at the territorial hospital for the insane on September 20, 1929, and remained as such patient until May 24, 1933, at which time he died. It appears that at the time of his admission the defendant was without property except a paltry sum in his possession and an interest in a leasehold of negligible value. The record also shows that he was in receipt of no income. Shortly after he was admitted into the hospital he became entitled to a small pension through the territorial retirement system, amounting to $16.21 per month, which was paid to his guardian who is now the administrator. This sum accumulated in the hands of the guardian up to the time of Mahoe's death and amounted at that time, together with the value of his other property already mentioned, to the total sum of approximately $380. Following Mahoe's death the defendant, Arthur Restarick, was duly appointed administrator of his estate and the Territory thereupon filed its verified claim with the administrator amounting to $1396.60, being the total amount of expense incurred by the Territory for the patient's maintenance. The judge of the circuit court denied the plaintiff's right to recovery

on two grounds, to wit: First, that Mahoe was an indigent ward of the Territory and no liability attached to him or his estate for his maintenance under the provisions of section 6, Act 114, L. 1925, which reads as follows: "Inmates' liability for expense. Every person not indigent committed or admitted to said hospital or any ward thereof, and any property of his or her estate not exempt from execution, shall be liable for the expenses attending his or her reception, maintenance and care; and the attorney general, whenever requested by the hospital superintendent, shall take such steps as may be appropriate, by suit if necessary, to compel the payment thereof and secure payment by the attachment or other sequestration of any property of such person not exempt from execution." And, secondly, the court held against the Territory on the ground that the accumulated pension was exempt from attachment, execution, garnishment or legal process under section 12, Act 55, L. 1925, which provides: "Exemption from taxation and execution. The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, any other right accrued or accruing to any person under the provisions of this Act and the moneys in the various funds created under this Act are hereby exempt from any tax of the Territory of Hawaii and shall not be subject to execution, garnishment, attachment or any other process whatsoever and shall be unassignable except as in this Act specifically provided."

Giving consideration to the last phase of the decision it seems to us apparent that this being a personal action in assumpsit and not a proceeding *in rem*, it is entirely immaterial whether the property of the estate of deceased is exempt from execution, garnishment or other legal process.

That question has no bearing upon the right of the plaintiff to recover judgment against the estate of deceased. Should the Territory prevail and recover judgment and then endeavor to sequester the fund in the hands of the administrator, then and not until then could that phase of the case become an issue.

This leaves remaining the one question to be determined in this appeal, that is to say, whether the lower court properly held Mahoe was, in the eyes of the statute, an indigent person during the time he was an inmate of the territorial hospital. It seems clear enough that it is the purpose of the statute to require the public to bear the cost of maintenance of an indigent insane person. There is some diversity of opinion among the law writers and in the decisions as to who is and who is not an indigent. Webster defines the word "indigent" as a person "destitute of property or means of comfortable subsistence; one who is needy or poor," and this definition has the approval of the supreme court of Wisconsin in *Juneau County* v. *Wood County,* 85 N. W. 387. Substantially the same definition is found in *City of Lynchburg* v. *Slaughter,* 75 Va. 57, 62. In some States attempt has been made by statute to define the term "indigent insane." The State of Missouri by statute provides in effect that an insane person is indigent if without dependents and possessed of property not exempt from execution and valued at less than $300. If he have dependents he is indigent unless possessed of property worth $1000 or over. Apparently Mahoe had no dependents and it also appears that his estate at the time of his death was worth less than $400, from which of course would be deducted the expenses of administration, the amount of which the record does not indicate. The small pension which he received monthly was of course entirely inadequate to maintain him. The

Territory, which is the plaintiff in this case, accepted him as an indigent patient at the time he entered the hospital and treated him as such at all times to the date of his death, although the Territory was paying to the guardian of the indigent the pension money. It was the duty of the officers of the Territory, if they considered that Mahoe by reason of the receipt of the pension had become nonindigent, to change his status at the hospital from a nonpaying to a paying inmate. No notice was ever given to the guardian that his ward would be required to assume the burden of his upkeep nor was there any contract, express or implied, that he should do so. It is unreasonable to suppose that this patient, during all these years, was receiving a monthly remittance from the territorial retirement bureau and the hospital authorities were not informed of this fact. If, therefore, the Territory chose to treat Mahoe at all times as an indigent and nonpaying inmate of the hospital, although he was in receipt of a small monthly income, we are of the opinion that the circuit judge properly held that Mahoe was an indigent inmate at the hospital and under the provisions of Act 114, L. 1925, the Territory cannot now recover from the estate of deceased for the costs of maintaining him at the hospital.

The decision and judgment of the court below are affirmed.

*W. B. Pittman*, Attorney General, and *G. P. Kimball*, Third Deputy Attorney General, for plaintiff in error.

*W. H. Heen* for defendant in error.